JM:SH
F.#2008R00388

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

LORI CAPORICCI,

    Defendant.

- - - - - - - - - - - - - - - - X

FILED IN CLERK'S OFFICE U.S. DISTRICT COURT E.D.N.Y.
MAY 19 2008
P.M.

INFORMATION

Cr. No. 08-289 (DLI)
(T. 18, U.S.C., §§ 371 and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

The Stock-Loan Business

    1. In the securities industry, financial institutions and their customers frequently engaged in transactions that required them to borrow securities from other financial institutions. In a typical stock-loan transaction, the lending institution and the borrowing institution established several financial terms for the stock-loan transaction. These terms typically included: (a) the fees and other payments, known as "rebates," that the parties would pay to each other in connection with the transaction; (b) the form of collateral to be posted by the borrower, which was often cash; and (c) the amount of the collateral, which was typically based on the market value of the securities being borrowed.

Stock-Loan Finders

  2. Stock-loan "finders" were entities in the business of facilitating stock-loan transactions in exchange for fees. Most finders were not registered broker-dealers. Borrowers and lenders typically paid the finders' fees from the profits earned in connection with particular stock-loan transactions.

The Defendant and Her Co-Schemers

  3. In or about and between January 1, 2000 and December 31, 2004, a corrupt stock-loan finder (the "Corrupt Finder"), whose identity is known to the United States Attorney, owned and operated a stock-loan finder firm (the "Corrupt Finder Firm").

  4. In or about and between January 1, 2002 and December 31, 2003, the defendant LORI CAPORICCI was associated with the Corrupt Finder Firm and with Jast, Inc. ("Jast"). CAPORICCI, through the Corrupt Finder Firm and Jast, held herself out as a stock-loan finder. Jast held an account at a bank in Staten Island, New York.

  5. In or about and between January 1999 and July 2003, a corrupt stock-loan trader ("the Corrupt Stock-Loan Trader"), whose identity is known to the United States Attorney, worked in the securities lending department at JPMorgan Chase

Bank ("JPMorgan Chase"). The Corrupt Stock-Loan Trader's duties included, among other things, borrowing and lending securities on behalf of JPMorgan Chase.

6. International Business Consultants ("IBC") was a company with an office in the Netherlands Antilles. Between July 2002 and December 2002, IBC assisted the defendant LORI CAPORICCI, the Corrupt Finder and the Corrupt Stock-Loan Trader in opening bank accounts in the Netherlands Antilles.

The Bribery Scheme

7. During the period from January 2002 to December 2003, JPMorgan Chase's practice was not to pay finder fees in connection with stock-loan transactions. Nevertheless, the defendant LORI CAPORICCI, the Corrupt Stock-Loan Trader, the Corrupt Finder and others executed a scheme to permit CAPORICCI and the Corrupt Stock-Loan Trader to receive finder fees in connection with stock-loan transactions involving securities loaned by JPMorgan Chase (the "Subject Securities"). As part of the scheme, CAPORICCI, the Corrupt Stock-Loan Trader and the Corrupt Finder agreed that the Corrupt Stock-Loan Trader would cause JPMorgan Chase to loan the Subject Securities at below-market rates to certain intermediary brokerage firms that themselves either: (a) paid finder fees to the Corrupt Finder Firm, Jast, or a nominee finder firm that would pass along the

4

bulk of the finder fees to the Corrupt Finder Firm and Jast; or (b) acted as middlemen between JPMorgan Chase and firms that paid finder fees.

8.  As a further part of the scheme, the defendant LORI CAPORICCI, the Corrupt Finder and the Corrupt Stock-Loan Trader agreed that a portion of the finder fees obtained in connection with the loan of the Subject Securities would be sent to the custody of IBC in the Netherlands Antilles by wire transfer and that the fraud proceeds would be divided roughly in the following manner: (a) 25% to an account controlled by CAPORICCI; (b) 25% to an account controlled by the Corrupt Finder or to the Corrupt Finder Firm; and (c) 50% to an account controlled by the Corrupt Stock-Loan Trader.  All of these payments, transfers and financial arrangements were made without the knowledge or approval of JPMorgan Chase.

CONSPIRACY

9.  The allegations contained in paragraphs 1 through 8 are realleged and incorporated as though fully set forth in this paragraph.

10. In or about and between January 2002 and April 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LORI CAPORICCI, together with others, did knowingly and intentionally conspire to travel in interstate commerce and use the mail and

5

facilities of interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit: Commercial Bribing in the Second Degree, in violation of New York Penal Law Section 180.00, and thereafter to perform and attempt to perform the promotion, management, establishment, carrying on, and facilitation of the promotion, management, and carrying on of such unlawful activity, to wit: by paying bribes to the Corrupt Stock-Loan Trader to influence his conduct in relation to JPMorgan Chase's affairs, in violation of Title 18, United States Code, Section 1952(a)(3).

11.  In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendant LORI CAPORICCI, together with others, committed and caused to be committed, among others, the following:

### OVERT ACTS

a.  On or about June 10, 2003, the defendant LORI CAPORICCI prepared an invoice requesting that $281,272.50 be sent by wire transfer to Jast's bank account in Staten Island, New York.

6

        b.    On or about July 2, 2003, the defendant LORI CAPORICCI sent an e-mail requesting that $554,138.35 be sent by wire transfer to Jast's bank account in Staten Island, New York.

        (Title 18, United States Code, Sections 371 and 3551 et seq.)

BENTON J. CAMPBELL  
UNITED STATES ATTORNEY  
EASTERN DISTRICT OF NEW YORK

BY: *[signature]*

ACTING UNITED STATES ATTORNEY  
PURSUANT TO 28 C.F.R. 0.136